# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1110V

| | |
|---|---|
| EVAN HIRSCH,<br><br>　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: December 5, 2023 |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.*

*Zoe Wade, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On August 31, 2020, Dr. Evan Hirsch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on September 11, 2018. Petition at 1, ¶¶ 1, 12. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$61,869.28**, **representing $60,000.00 for actual pain and suffering, plus $1,869.28 for past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I.  **Relevant Procedural History**

Approximately two weeks after the case's initiation, Dr. Hirsch filed a declaration from himself plus one from a security guard at the hospital where he worked who received a flu vaccine at the same time,[3] as well as the medical records required by the Vaccine Act. Exhibits 1-17, filed Sept. 10, 2020, ECF Nos. 6-7; *see* Section 11(c). On October 14, 2020, the case was activated and assigned to the SPU (OSM's adjudicatory system for resolving cases deemed likely to settle). ECF No. 9.

Exactly one year later, on October 14, 2021, Respondent stated that he was willing to engage in settlement discussions. ECF No. 19. The parties thereafter attempted resolution for several months, but informed me in January 2022 that they had reached an impasse. ECF No. 23. Approximately two months later, on March 16, 2022, Respondent filed his Rule 4(c) Report, setting forth his objections to compensation. ECF No. 24. Specifically, he contends Petitioner has not provided preponderant evidence of a 48-hour pain onset, required for a Table SIRVA (and also cannot meet the standards for a causation-in-fact claim). *Id.* at 8-10; *see* 42 C.F.R. § 100.3(a)(XIV)(B) & (c)(10) (2017); *Althen v. Sec'y of Health & Hum. Servs.,* 418 F.3d 1274, 1278 (Fed. Cir. 2005)).

In response, Petitioner requested a Rule 5 status conference (ECF No. 25), which I conducted on August 17, 2022 (ECF No. 27). After informing the parties that I would likely rule in favor of Petitioner on the onset issue, but did not expect the compensation awarded to be significant, I instructed them to renew their settlements discussions. *Id.*

One month later, Petitioner stated that the parties had again been unable to reach an informal agreement, and requested leave to file a motion for a ruling on the record. ECF No. 28. On November 18, 2022, he filed a supplemental declaration, photograph of himself hiking in Nepal, and a receipt from his latest purchase of TheraBand equipment. Exhibits 18-20, ECF No. 29. Two months later, on January 18, 2023, he filed his motion, seeking $75,000.00 for actual pain and suffering and $1,913.07 to reimburse his out-of-pocket expenses. Petitioner's Motion for a Ruling on the Record as to Entitlement and Damages ("Brief") at 1, ECF No. 32.

Respondent reacted on March 7, 2023, insisting that I should deny entitlement. Respondent's Response to Petitioner's Motion ("Opp.") at 1, ECF No. 33. Regarding damages, Respondent argues that I should award a pain and suffering amount in an unspecified sum but less than that Petitioner seeks, and defers to my assessment of the appropriate amount of out-of-pocket expenses. *Id.* at 7-8. In his reply, Petitioner counters

---

[3] The declarations were signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibits 1, 3.

the arguments made by Respondent. Petitioner's Reply to Opp. ("Reply"), filed March 8, 2023, ECF No. 34.

## II.     Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are deemed entitled to some presumptive weight (although, as discussed below, they are not *presumed* accurate in any *per se* sense). *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To vary the content of a record, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a).

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

#### 1. Pain Onset

Respondent contests the second SIRVA Table claim criterion - whether onset of Petitioner's pain occurred within 48 hours of vaccination. Opp. at 1-7; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or

4

manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). He argues that the lack of any entry regarding right shoulder pain and normal musculoskeletal examination results in the medical record from a visit on October 15, 2018 (five days post-vaccination) (Opp. at 2-7), proves "that [P]etitioner had not developed pain in his right shoulder by the time of his appointment" (*id.* at 7). He insists that Petitioner's assertions, that he mentioned his post-vaccination pain to the treating physician who he believes discounted its significance and that the visit did not include a physical examination, only a spoken exchange of information, are not accurate. *Id.* at 4-6.

In response, Petitioner criticizes Respondent's position, claiming it is based solely upon the *lack* of any mention of right shoulder pain at one medical appointment that occurred only five days post-vaccination. Reply at 2. At the same time, Petitioner argues, Respondent ignores the following evidence which supports his assertions:

1. the declaration of a security guard working at the same hospital who recalled Petitioner complaining of his right shoulder pain the next day and treating the injury with ice packs;

2. Petitioner's status as an emergency room physician who was self-treating his injury;

3. notations indicating the normal musculoskeletal examination results five-days post-vaccination were related to Petitioner's head and neck, as well as the fact that it would be uncommon for Petitioner to have developed reduced ROM that quickly;

4. Petitioner's orthopedic referral by the same physician seen five days post-vaccination only a few weeks thereafter; and

5. the consistent histories Petitioner provided when seeking treatment which attributed his right shoulder pain to the flu vaccine he received.

*Id.* at 2-3. Petitioner thus maintains he "has established by preponderant evidence that the onset of his right shoulder pain was more likely than not immediate, and thus within 48 hours of the flu vaccination." Brief at 28-29.

Given that the first medical record post-vaccination occurred on only five days after, any lack of concern by Petitioner or his treating physician (an internist) regarding any right shoulder pain he was experiencing is understandable. This appointment had actually been scheduled *prior* to vaccination for the purpose of establishing care. Exhibit 4 at 5-8. It contains comprehensive coverage of Petitioner's prior and family medical

history, prescribed medication, allergies, diagnoses: abnormal glucose levels, chronic kidney disease, elevated prostrate specific antigen and white blood cell count, and cardiac arrhythmia. *Id.* And the listed vital signs with exact amounts noted are those commonly collected by a nurse or other medical support staff who perform intake duties at the beginning of the medical appointment. *Id.* at 6. In contrast, there is no notation under the examination section of the medical record containing information specific to Petitioner. Instead, it appears to contain default entries indicating no issues. *Id.*

Most importantly, the medical record itself indicates the primary purpose of the visit was to check labs (*id.* at 5), and Petitioner was instructed to return in three months for a "comprehensive exam" (*id.* at 7). Furthermore, when Petitioner's right shoulder pain continued, this same internist approved an orthopedic referral without requiring another visit to first assess Petitioner's condition himself.

The Federal Circuit has provided some controlling guidance for how record omissions should be evaluated when determining fact issues in Vaccine Act cases. As the Circuit has stated, although "it [is] not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony," it is also not the case that "medical records are presumptively accurate and complete. Nor did we state that when a person is ill, he reports all his problems to his doctor, who then faithfully records everything he is told." *Kirby v. Sec'y of Health & Hum. Servs.,* 997 F.3d 1378, 1382-83 (Fed. Cir. 2022) (citing *Cucuras,* 993 F.2d 1525). Thus, the mere fact a "first-in-time" record says one thing does not conclusively resolve a fact question.

Here, the proposition that Petitioner's treating physician failed to record his mention of right shoulder pain is reasonable, in light of the timing and purpose of the appointment, as well as Petitioner's own medical training. Thus, this initial treatment record does not provide the strong evidence of the *absence* of right shoulder pain that Respondent contends.

To further support his assertion of immediate onset, Petitioner has provided a declaration from a security guard at the hospital in Wisconsin who also received a vaccination on the same date, and who recalls Petitioner complaining of right shoulder pain the next day, as well as three to four weeks later, as well as mentioning that he was treating his injury with ice packs. Exhibit 3 at ¶¶ 6-8, 10. And there are numerous medical records showing Petitioner consistently reported an immediate onset when seeking treatment.[5] Even if medical records are not presumptively accurate, they "warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by

---

[5] At his first orthopedic visit 27-days post-vaccination, he described mild to moderate, aching, and sharp right shoulder pain since receiving the flu vaccine on October 10, 2018. Exhibit 4 at 15. He again reported instant pain upon vaccination at his first physical therapy ("PT") session in late May 2019. Exhibit 5 at 2.

health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that some weight should be accorded to this information even when the information is provided by Petitioner.

All of the above amounts to preponderant evidence establishing Petitioner likely suffered right shoulder pain immediately upon vaccination. Petitioner has thus satisfied the second criterion for a Table SIRVA injury.

### 2. Other QAI Criteria

Respondent does not dispute any other Table SIRVA requirements, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal a prior or current condition or abnormality which would explain Petitioner's condition or pain and limited range of motion ("ROM") other than in Petitioner's injured right shoulder. Thus, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of his injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## III. Compensation to be Awarded

### A. Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *McKenna v. Sec'y of Health & Hum. Servs.*, No. 21-0030V, 2023 WL 5045121, at *1-3 (Fed. Cl. Spec. Mstr. July 7, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related

7

injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### B. Parties Arguments

Petitioner seeks compensation in the amounts of $75,000.00 for past pain and suffering and $1,913.07 for unreimbursed expenses. Brief at 1, 25. To support the proposed pain and suffering award, he emphasizes the severe nature of his initial pain (ten out of ten) for one month then moderate pain (five out of ten) thereafter. *Id.* at 19-20. Asserting that an entry in the medical record from his last orthopedic visit on January 30, 2020, more than 15-months post-vaccination, erroneously refers to rock climbing instead of hiking, he insists that he "continue[s] to experience right shoulder stiffness and pain with lifting." *Id.* at 21-22. Included in his out-of-pocket expenses is the cost of additional TheraBand resistance bands purchased in October 2021. Exhibit 21 at 1, 25; *see* Brief at 22 (indicating his prior resistance bands were stretched due to continuous use). Petitioner favorably compares the facts and circumstances in his case to those experienced by the petitioners in *Attig, Kim, Marino, Hartman,* and *Coluccio*[7] - decisions featuring awards ranging from $75,000.00 to $80,000.00. Brief at 27-28.

In contrast, Respondent asserts only that Petitioner should receive an unspecified lesser amount for past pain and suffering (but defers resolution of out-of-pocket expenses to my discretion). Opp. at 7. In support, Respondent cites evidence showing only mild to moderate pain and conservative treatment, following Petitioner's initial orthopedic visit. *Id.* He emphasizes the nearly full ROM Petitioner exhibited at his second orthopedic visit, after a six-month gap in treatment, and normal ROM shown at the final appointment on January 30, 2020, more than 15-months post-vaccination. *Id.* at 7-8.

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[7] *Attig v. Sec'y of Health & Hum. Servs.,* No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000 for past pain and suffering); *Kim v. Sec'y of Health & Hum. Servs.,* No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000 for past pain and suffering); *Marino v. Sec'y of Health & Hum. Servs.,* No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $80,000 for past pain and suffering); *Hartman v. Sec'y of Health & Hum. Servs.,* No. 19-1106V, 2022 WL 444456 (Fed. Cl. Spec. Mstr. Jan. 14, 2022) (awarding $75,000 for past pain and suffering); *Colucci v. Sec'y of Health & Hum. Servs.,* No. 19-1684V, 2022 WL 17849579 (Fed. Cl. Spec. Mstr. Dec. 15, 2022) (awarding $80,000 for past pain and suffering).

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The medical records show that, except for an initial one-month period when he reported more severe levels of pain, Petitioner suffered a mild to moderate SIRVA injury for approximately 15 months. After his first orthopedic appointment, he did not seek treatment again until May 2019, six-month post-vaccination. *See* Exhibit 5 at 5-7. At this second orthopedic visit, he exhibited a nearly full ROM. *Id.* at 7. And at his first PT session five days later, Petitioner "rate[d] his worst pain as 5/10" (five out of ten), acknowledging that his more severe level of pain (ten out of ten) occurred only during the first month post-vaccination. *Id.* at 2.

Over the subsequent four-month period, Petitioner obtained further relief from conservative treatment - including 13 PT sessions, independently performed stretching exercises, and a cortisone injection administered in mid-September 2019, approximately 11 months post-vaccination. Exhibits 5, 7, 8 at 1-13. At his last PT session on September 24, 2019, Petitioner expressed uncertainty regarding the effectiveness of the recently received injection, but "state[d] that he has little to no pain with daily activities." Exhibit 8 at 12.

Petitioner did not return for treatment again until his last orthopedic visit on January 30, 2019, more than 15-months post-vaccination. Exhibit 8 at 14-17. Even assuming that his assertion is correct - that the entry referencing rock climbing in the medical record from this visit is erroneous - the record reflects only mild SIRVA symptoms as also reported in late-September 2019. *Id.* at 14-17; *see* Exhibit 18 at ¶¶ 5-11 (declaration addressing this issue). Acknowledging "significant improvement in right shoulder pain since [his] last visit" September 18, 2019), Petitioner described moderate, but only occasional, pain which was aggravated by lifting and relieved by injection and PT. Exhibit 8 at 14. The remainder of the visit was dedicated to a left knee injury he suffered three months earlier, and Petitioner did not seek treatment for his right shoulder thereafter. *Id.* at 14-17.

Although suggestive of a significant improvement in symptoms, the initial six-month gap in treatment (from early November 2018 through mid-May 2019) is partially explained by Petitioner's work. An emergency room physician who often travels to other areas to provide care on a temporary basis, Dr. Hirsch was working in Waupaca, Wisconsin (where he received the vaccine in question) from April 6, 2018, through February 16, 2019. Exhibit 1 at ¶¶ 1, 4. Because he attended his primary care and orthopedic appointments in California, the location of his permanent residence, his second orthopedic appointment was likely delayed by his return to work in Wisconsin through February of the next year. *See,* e.g., Exhibit 4 at 4-5; Exhibit 5 at 8 (showing these clinics near Petitioner's residence in Torrance, California).

Additionally, Petitioner's profession as a physician likely made him pre-disposed to self-treat his symptoms, rather than seeking care from another medical provider. This in fact is often seen in Program cases. *See,* e.g., *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-0226V, 2020 WL 5522948, at *11 (Fed. Cl. Spec. Mastr. Aug. 14, 2020); *Marino,* 2018 WL 2224736, at *3; *Leslie v. Sec'y of Health & Hum. Servs.,* No. 18-0039V, 2021 WL 837139, at *9 (Fed. Cl. Spec. Mstr. Jan. 28, 2021). Thus, although any gaps in treatment still support the conclusion that Petitioner experienced overall a less severe injury, the weight of this evidence is lessened in Petitioner's case due to his profession and temporary work more than two thousand miles away.

However, Petitioner has acknowledged that he only experienced severe pain levels for the initial month of his injury. By eleven-months post-vaccination, he reported only occasional pain. And he provided no evidence, other than his own assertions, of an injury which continued beyond late January 2019.

Because they involved petitioners who suffered longer initial periods of severe pain and/or an overall injury duration, I do not find the cases cited by Petitioner to be particularly good comparables for purposes of determining damages. *See,* e.g., *Hartman*, 2022 WL 444456, at *4. And Respondent did not offer any alternatives.[8] Instead, I find that the facts and circumstances in *Clendaniel* – a decision featuring awards of $60,000.00, to be more similar to Petitioner's case. *Clendaniel v. Sec'y of Health & Hum. Servs.,* No. 20-0213V, 2021 WL 4258775, at *8-9 (Fed. Cl. Spec. Mstr. Aug. 18, 2021). The *Clendaniel* petitioner also sought treatment approximately one-month post-vaccination, suffered only one to two months of severe pain, and experienced a SIRVA

---

[8] I have previously criticized Respondent's failure to fully defend his position regarding damages by failing to provide an alternative amount or comparable Program cases. *E.g., Berberich v. Sec'y of Health & Hum. Servs.,* No. 20-0010V, 2021 WL 4823551, at *8 (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

injury lasting slightly more than one year. *Id.* at Thus, I find that Petitioner should receive a past pain and suffering award of $60,000.00.

Petitioner's request for unreimbursed expenses is acceptable except for one matter. Given that Petitioner's SIRVA injury appears to have substantially resolved by January 2020, I will not reimburse Petitioner for the cost of the last set of TheraBand resistance bands - $43.79, purchased in October 2021, almost two years later. *See* Exhibit 21 at 1, 25. I will award the remaining expenses, consisting of PT copays, the out-of-pocket cost of the MRI performed in December 2018, and the cost of resistance bands purchased in December 2018, and May 2019, totaling $1,869.28 ($1,917.07 - $43.79). *See id.* at 1-24.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's right shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $60,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[9] I also find that Petitioner is entitled to $1,869.28 in actual unreimbursable expenses.**

**I therefore award Petitioner a lump sum payment of $61,869.28, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.